UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------

SHERRY A. SHERMAN,

                      Plaintiff,

  -v-                                                    7:11-CV-910

NATIONAL GRID, doing business as
Niagara Mohawk Power Corporation,

                      Defendant.

--------------------------------------

APPEARANCES:                                    OF COUNSEL:

SHERRY A. SHERMAN
Plaintiff, Pro se
24032 County Route 159
Watertown, NY 13601

BOND, SCHOENECK LAW FIRM          ROBERT A. LABERGE, ESQ.
Attorneys for Defendant                     KSENIYA PREMO, ESQ.
One Lincoln Center
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      On August 3, 2011, plaintiff Sherry A. Sherman ("plaintiff" or "Sherman"), proceeding pro se, commenced this action against defendant National Grid ("defendant" or "National Grid"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). On December 5, 2012, plaintiff amended her complaint allege claims

for: (1) gender discrimination under Title VII; (2) retaliation under Title VII; and (3) a violation of the Equal Pay Act. After a brief discovery period, defendant moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure ("Rule") 56. Plaintiff opposed and defendant replied. The motion was taken on its submissions without oral argument.

## II. BACKGROUND

Unless otherwise noted, the following facts are undisputed. Sherman is currently employed by National Grid and has advanced to a number of different positions in her twenty-one years with the company. See Am. Compl., ECF No. 20, ¶ 4. On February 10, 2008, plaintiff was promoted to a Service Representative A ("SR-A") position. Primo Aff., Ex. E, ECF No. 25-20, 8 ("Pl.'s Dep.").[1] At some point in early 2008, plaintiff also became pregnant. See Am. Compl. ¶ 14.

On March 5, 2008, Sherman submitted a bid for promotion to a Service Representative B ("SR-B") position. Pl.'s Dep. 11. Generally, National Grid requires an employee seeking promotion to SR-B to have been employed as an SR-A for two years and to have satisfactorily completed SR-B School. Id. 11-13; DeMauro Decl., ECF No. 25-1, ¶ 16. However, National Grid frequently promoted internal candidates to an SR-B position before these requirements were satisfied. Pl.'s Dep. 19. These early promotions were made with the stipulation that the employee would be paid at the SR-A compensation level until the SR-B requirements had been met. Id.

On March 16, 2008, Sherman and three other male employees—Joseph Lopata, Kermit Dingle, and Daniel Mitchell—were awarded SR-B positions pursuant to this early

---

[1] This pagination corresponds to the page numbers assigned by CM/ECF, and will be used throughout the opinion for citations to specific pages of individual docket entries.

promotion policy.  Id. 18; DeMauro Decl. ¶ 19.  Shortly thereafter, National Grid hired two additional men—Joseph Ramus and Justin Parody—to fill SR-B positions.  See Pl.'s Dep. 15; DeMauro Decl. ¶ 22.  All six of these newly hired SR-B employees, including plaintiff, were scheduled to attend SR-B School during the next available training session in October 2008.  DeMauro Decl. ¶ 23.  However, on October 13, 2008, plaintiff took maternity leave and was unable to complete the SR-B School training session in October 2008.  Pl.'s Dep. 32.

On January 5, 2009, Sherman returned from maternity leave.  Id. 7.  Shortly thereafter, she filed an internal complaint with National Grid's Human Resources ("HR") Department alleging that her supervisor, Dan Draper ("Draper"), had made inappropriate comments about her pregnancy and that she believed his attitude had impacted her ability to be promoted to an SR-B Position.  Ireland Decl., ECF No. 25-13, ¶ 7.  Defendant's HR Department conducted an internal investigation.  Id. ¶ 8.  This investigation determined that Draper's conduct had no impact on plaintiff's SR-B award, but recommended that Draper be counseled regarding this issue and that he attend sensitivity training because of his alleged comments.  Id. ¶ 12.  Draper attended the counseling and plaintiff was informed of the results of the investigation.  Id. ¶¶ 14-15.

In July 2009, Sherman attended SR-B School and passed on her first attempt.  Pl.'s Dep. 17; DeMauro Decl. ¶¶ 32-34.  Plaintiff and the other employees who attended this session were required to pass a "physical demands and agility test."  Pl.'s Dep. 33; DeMauro Decl. ¶ 33.  This test was not a required part of SR-B School during previous sessions, but had been incorporated as part of an agreement between National Grid and plaintiff's union.  Pl.'s Dep. 35-36.  All male and female employees who attended the July 2009 session of SR-B School were required to pass this test.  Id. 34.

On February 22, 2010, Sherman was assigned to complete some appointments at the homes of individual National Grid customers. DeMauro Decl. ¶ 45. National Grid employees completing this kind of work are required to use defendant's mobile scheduling system, which also tracks the location of each employee's service van, to electronically indicate whether or not they were able to successfully complete each appointment. Id. However, a dispatcher in charge of tracking this information noticed that plaintiff had marked her appointments from locations that were far away from the homes of the customers she had been assigned.[2] Pl.'s Dep. 55. As a result of this discrepancy, defendant instituted an investigation to determine why this had occurred and plaintiff was issued an "oral reminder" about the appropriate procedures for marking customer appointments in March 2010.

On February 26, 2010, Sherman continued to advance within the company by completing SR-C School.[3] Pl.'s Dep. 38. The next day, an internal opportunity to do "storm work" arose for qualified SR-C employees. Id. 38. This work involved an opportunity to receive over-time pay by traveling out of town and performing work on storm-damaged lines. See id. 39. Plaintiff was not selected for this "storm work." DeMauro Decl. ¶ 37.

In March 2010, Sherman's fiancé contacted National Grid's HR Department and claimed plaintiff was being harassed by Draper because she was allegedly being required to take extra tests to complete SR-B School. Ireland Decl. ¶ 17. On March 12, 2010, plaintiff

---

[2] Sherman disputes the exact circumstances that gave rise to this breach of company protocol. Plaintiff claims that her mobile system malfunctioned and she returned to "home base" to reboot and logged her appointments from there. Pl.'s Opp'n Mem., ECF No. 28, 4. Importantly for the purposes of this motion, plaintiff does not dispute that defendant's investigation into this discrepancy was reasonable or that she was issued an "oral reminder" as a result of this investigation. Pl.'s Dep. 55.

[3] Promotion to SR-C status generally required an employee to spend two years as an SR-B. Pl.'s Dep. 23.

met with Lead Ethics Analyst Margaret Ireland ("Ireland") and outlined the nature of her complaint. Id. ¶ 18. In essence, plaintiff believed that the individual components of the physical demands and agility test she was required to take as part of SR-B School were being implemented differently between male and female employees. Id. Defendant's HR Department investigated these complaints and ultimately concluded that these complaints were unsubstantiated. Id. ¶ 31.

On March 14, 2010, Sherman was promoted to an SR-C position.[4] Pl.'s Dep. 23. On April 12, 2010, plaintiff filed an administrative charge with the New York State Division of Human Rights ("NYSDHR"). Premo Aff., Ex. A, ECF No. 25-16, 2. On March 24, 2011, the NYSDHR determined that there was no probable cause to believe that National Grid had engaged in, or is currently engaging in, the unlawful discriminatory practices of which plaintiff has complained. Id. 4. On May 5, 2011, plaintiff received a notice of her right to sue and shortly thereafter initiated this action in federal court.

## III. DISCUSSION

National Grid argues it is entitled to summary judgment on all of Sherman's claims because: (1) most of the allegations are time-barred; (2) she has failed to establish a prima facie case of gender discrimination; (3) she has failed to establish a prima facie case of retaliation; and (4) her Equal Pay Act claim is factually and legally insufficient.

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[4] Plaintiff is currently employed as an SR-C/Step 2, which is the highest level within the SR job series progression.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. See id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

In situations where a party seeks summary judgment against a pro se litigant, the non-movant must be afforded special solicitude. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his

pleadings liberally.'") (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). This rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims. See Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 146 (2d Cir. 2002).

### B. Discrimination under Title VII

#### 1. Timeliness

National Grid correctly observes that many of Sherman's allegations are time-barred. "Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)). Failure to timely file an administrative complaint ordinarily results in dismissal of the claim. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). A plaintiff in federal court cannot base claims on time-barred "discrete acts" that are easily identified—such as termination, failure to promote, and denial of transfer. Id. at 114. Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113.

Here, Sherman filed her administrative charge with the NYSDHR on April 12, 2010. Premo Aff., Ex. A, 2. This would ordinarily bar consideration of any claims involving discrete discriminatory acts that occurred prior to June 16, 2009—the 300-day limitations period applicable in this case. However if a plaintiff files an administrative charge alleging an ongoing policy of discrimination, "all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Patterson v. County of Oneida, 375

F.3d 206, 220 (2d Cir. 2004) (citation omitted). However, this "continuing violation doctrine is disfavored in this Circuit and will be applied only upon a showing of compelling circumstances." Cabrera v. NYC, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) (quoting Lloyd v. WABC-TV, 879 F. Supp. 394, 399 (S.D.N.Y. 1995)). Indeed, the Second Circuit has repeatedly ruled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Id. (citation and explanatory parenthetical omitted).

Sherman has failed to identify a series of related acts sufficient to constitute an ongoing policy of discrimination. Plaintiff timely alleges in her administrative charge that she was denied an opportunity for a "storm work" assignment in February 2010. Plaintiff also identifies the physical demands and agility test, required as part of SR-B School in July 2009, as being related to her general charge of gender discrimination. However, these two timely claims are not sufficiently related to her otherwise untimely allegations that she suffered: (1) a delay in being awarded an SR-B position in March 2008; (2) a denial of an opportunity to shadow a senior employee between March and October 2008; (3) three inappropriate comments by her supervisor regarding her pregnancy; and (4) the advancement of male employees to an SR-B position while she was on maternity leave.

Sherman's general characterization of these events as "continuing discrimination" fails to establish any sort of discriminatory policy or mechanism. Rather, these alleged acts are denials of discrete opportunities by various individuals at various times. They are not sufficiently related to her timely allegations of a single denial of a "storm work" assignment or the imposition of a test administered to male and female employees as part of SR-B School to constitute a continuing violation under a disfavored doctrine. In other words, these are

precisely the sort of "discrete acts" that are easily identified and require the timely filing of an administrative charge as a prerequisite to filing suit in federal court. Accordingly, only plaintiff's timely allegations relating to the physical demands and agility test and the "storm work" assignment will be evaluated.

### 2. Gender Discrimination

National Grid argues that the discriminatory acts Sherman identifies neither constitute adverse employment actions nor occurred under circumstances giving rise to an inference of discriminatory intent.

A Title VII gender discrimination case with no direct or overt evidence of discriminatory conduct invokes the familiar burden-shifting analysis set forth by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802 (1973). First, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802).

A defendant may rebut this showing by articulating a legitimate, non-discriminatory reason for the employment action. Id. (citations omitted). Once rebutted, the burden shifts back to the plaintiff to come forward with "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." Id. (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)) (alterations in original) (internal quotation marks omitted). "To get to the jury, ;[i]t is not enough . . . to

disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'" Id. (citation and footnote omitted).

Sherman's first timely allegation relates to the physical demands and agility test required as part of SR-B School in July 2009. Plaintiff alleges that "[u]nlike the men, [she] was subjected to a more onerous and lengthy training." Am. Compl. ¶ 18. She also implies that because this test was not required in subsequent SR-B School training sessions, it was created and implemented merely to discriminate against her. See Pl.'s Dep. 33-35. But these allegations are belied by plaintiff's own deposition testimony, where she concedes that the implementation of this test had been previously agreed to by the union and that the test applied equally to both the men and the women in the class. See id. 34-35. The circumstances surrounding the implementation and application of this test to the July 2009 SR-B School training session do not give rise to an inference of discriminatory intent, and plaintiff has not proffered any other evidence in support of such an inference.

Sherman's second timely allegation relates to being denied an opportunity to do "storm work" in February 2010. Am. Compl. ¶ 22. Plaintiff agreed at her deposition that the storm occurred on February 27, 2010, and her own testimony elsewhere establishes that "they were looking for two C reps" to "go out of town on the storm" on that date. Pl.'s Dep. 38-39. Plaintiff also testified that although she finished SR-C School on February 26, 2010, she did not become an SR-C until March 14, 2010. Pl.'s Dep. 23, 38. In any event, such a one-time denial of an opportunity to work overtime does not constitute a change in responsibilities so significant as to constitute an adverse employment action. See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (noting that employment actions which are not materially less prestigious, less suited to an individual's skills or

expertise, or materially less conducive to career advancement are insufficient to create issues of material fact).

Neither of these timely allegations are sufficient to establish a prima facie case of gender discrimination under Title VII. Accordingly, defendant is entitled to summary judgment on these claims.

### 3. Retaliation

National Grid argues that Sherman's internal complaints to defendant's HR Department do not establish a claim for retaliation. Sherman supports her claim by stating only that "[a]s a result of Plaintiff's expressed opposition to what she reasonably believed to be unlawful and discriminatory actions toward her in employment, Plaintiff was unlawfully subjected to reprisal and retaliation." Am. Compl. ¶ 43. A review of the record reveals two allegedly retaliatory employment actions: (1) a March 2010, oral reminder; and (2) "coach and counsel" sessions regarding plaintiff's job performance.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employee [ ] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation under Title VII requires a plaintiff to show: (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; (3) a causal connection exists between the protected activity and the adverse action. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (citations omitted). "Protected activity" includes both the filing of formal discrimination charges as well as informal protests, such as making a complaint to management. Pellegrini

v. Sovereign Hotels, Inc., 740 F. Supp. 2d 344, 354 (N.D.N.Y. 2010) (Sharpe, C.J.) (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).

In the context of a Title VII retaliation claim, an adverse employment action is one that is "materially adverse to a reasonable employee or job applicant." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). Actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id.

However, a materially adverse change in an employee's working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012) (quoting Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012)), aff'd, 526 Fed. Appx. 124 (2d Cir. 2013) (summary order). Examples of actions that are "sufficiently disadvantageous" so as to be considered materially adverse "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (citation and internal quotation marks omitted).

Here, Sherman claims that she was issued an "oral reminder" in March 2010 in response to her complaints of discrimination. However, plaintiff concedes that she suffered no alteration in pay, benefits, or job progression as a result of this oral reminder, and that it was removed from her employment file after six months. Pl.'s Dep. 56. Plaintiff also concedes that this oral reminder was issued in response to an investigation into her failure to follow company procedure with regard to service appointments at customer's homes, and

that such an investigation was reasonable. Id. 55. "[A]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006). In any event, a single oral reminder is not sufficiently materially adverse for purposes of Title VII's retaliation provision. See Chang v. Safe Horizons, 254 Fed. App'x 838, 839 (2d Cir. 2007) (summary order) (noting that "oral and written warnings do not amount to materially adverse conduct").

Sherman also claims she was given "coach and counsel" sessions in response to her complaints of discrimination. However, plaintiff concedes that a "coach and counsel" session is not considered a disciplinary action, and that it had no impact on her compensation, benefits, or job progression. Pl.'s Dep. 49-50. Indeed, cases in this Circuit have routinely held that performance warnings, without more, do not constitute a materially adverse action. See Nieves v. District Council 37 (DC 37), AFSCME, AFL-CIO, No. 04-CV-8181, 2009 WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009) (collecting cases). Because plaintiff has failed to identify that she suffered a materially adverse employment action, she has failed to establish a prima facie case of retaliation under Title VII. Accordingly, defendant is entitled to summary judgment on these claims.

### C. Equal Pay Act

National Grid argues that Sherman cannot state a viable claim under the Equal Pay Act because she has failed to demonstrate that it paid different wages to male and female employees.

The Equal Pay Act ("EPA") prohibits employers from discriminating between employees on the basis of sex by paying higher wages for equal work on jobs that require

"equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). A plaintiff seeking to prove a violation under the EPA must demonstrate: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; [and] (3) the jobs are performed under similar working conditions." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 524 (2d Cir. 1992) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).

Sherman alleges generally that "as a woman she was deprived equal pay for equal work, as a male and/or men were paid better wages and/or benefits of employment for work which required equal skill, effort and responsibility." Amended Compl. ¶ 31. However, plaintiff testified at her deposition that all employees were paid the same hourly wage regardless of their gender. Dep. 25.

> Q. [W]ould you agree that all employees in the [SR-A] position are paid the same hourly wage regardless of their gender?
> A. Yes.
> ....
> Q. [W]ould you agree that all employees in the [SR-B] position are paid the same hourly wage regardless of their gender?
> A. Yes.
> ....
> Q. [W]ould you agree that all employees in the [SR-C] position are paid the same hourly wage regardless of their gender?
> A. Yes.

Dep. 25. These admissions, coupled with National Grid's correct observation that plaintiff has utterly failed to produce any evidence that defendant paid males and females different wages for jobs performed under similar working conditions, underscores that plaintiff's EPA claim must fail. Because plaintiff has not established that defendant pays different wages to

employees of the opposite sex, she has not identified a dispute of material fact necessitating trial. Accordingly, defendants are entitled to summary judgment on this claim.

## IV. **CONCLUSION**

Viewing the evidence in the light most favorable to Sherman, the non-movant, her claims various claims fail as a matter of law. Many of plaintiff's claims are barred by her failure to timely exhaust administrative remedies. Plaintiff's timely claims fail to establish a prima facie case of discriminatory activity under either Title VII or the EPA. Accordingly, defendant is entitled to judgment as a matter of law.

Therefore, it is

ORDERED that

1. Defendant National Grid's motion for summary judgment (ECF No. 25) is GRANTED in its entirety;

2. Plaintiff's Amended Complaint (ECF No. 20) is DISMISSED; and

3. The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January 31, 2014.
     Utica, New York.